UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO.:

| | |
|---|---|
| LORRAINE FRATILLA and KESHA REID, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUNPATH LTD., <br><br> Defendant. | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs,  LORRAINE FRATILLA ("Fratilla") and KESHA REID ("Reid") (collectively, "Plaintiffs"), bring this class action complaint under Rule 23 of the Federal Rules of Civil Procedure against Defendant, SUNPATH LTD. ("Defendant" or "SunPath") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").  In support, Plaintiffs state:

**INTRODUCTION**

1.      Plaintiffs, individually and as class representatives for all others similarly situated, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of SunPath in negligently, knowingly, or willfully contacting Plaintiffs on their cellular telephone lines, in violation of the TCPA, 47 U.S.C. § 227.

2.      SunPath has placed at least two artificial or prerecorded telemarketing phone calls to Plaintiff Fratilla's cellular telephone number in violation of the TCPA, which makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or

prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." *See* 47 U.S.C. § 227(b)(1)(A).

3.      SunPath has placed at least two unsolicited phone calls to both Fratilla and Reid's telephone numbers, which are registered on the National Do-Not-Call Registry, within a twelve-month period, in violation of the TCPA, which makes it unlawful for any telemarketer to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

4.      SunPath called Plaintiffs with no legitimate purpose – but with the sole intent to solicit business for SunPath.

5.      Plaintiffs, and those similarly situated, never consented to receive any calls, including telemarketing calls, from SunPath.  Because of SunPath's use of artificial or prerecorded messages when placing the calls, and SunPath's repeated calls within a 12-month period to Plaintiffs whose numbers are listed on the National Do-Not-Call Registry in violation of TCPA regulations, Plaintiffs bring this action on behalf of proposed nationwide classes of other persons who received illegal soliciting calls from SunPath.

## **PARTIES**

6.      Plaintiff Lorraine Fratilla is a citizen of Broward County, Florida.

7.      Plaintiff Kesha Reid is a citizen of Broward County, Florida.

8.      Defendant SunPath Ltd. is a Delaware corporation, is registered to conduct business in Florida as a foreign corporation, and upon information and belief has its principal place of business in Braintree, Massachusetts.  SunPath conducts its business within this District, and throughout Florida and the United States.

## JURISDICTION AND VENUE

9.      This Court has federal subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331, because Plaintiffs' TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10.      This court has personal jurisdiction over Defendant under Florida's long arm statute, Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), and § 48.193(2).  Defendant has operated, conducted, engaged in, and carried on a business in this state involving the marketing and sale of extended automobile warranties to consumers in this state, including the unlawful telemarketing activities that give rise to the claims in this case. Defendant has engaged in tortious conduct in this state by placing the unlawful telephone calls to Plaintiffs and other class members in this district in violation of the TCPA, and Defendant's unlawful telemarketing and solicitation activities have caused injury to Plaintiffs, and other class members, in this District.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including the transmission of Defendant's unlawful calls to Plaintiffs.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress

3

to pass the TCPA").

14.     In enacting the TCPA, Congress found that

[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

TCPA of 1991, Pub. L. No. 102–243, § 2(12); see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *2, 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." *See* 47 U.S.C. § 227(b)(1)(A).

16.     It is also unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

17.     There is a private right of action in the TCPA for persons who receive calls in violation of the statute.  *See* 47 U.S.C. §§ 227(b)(3); (c)(5).

18.     A plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

19.     "The TCPA can impose liability directly on any person or entity on whose behalf a third party places a call in violation of" the TCPA. *Harrington v. RoundPoint Mortg. Servicing*

*Corp.*, 163 F. Supp. 3d 1240, 1245 (M.D. Fla. 2016).

20.     The Federal Communications Commission's published regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 (1995).

## FACTUAL ALLEGATIONS

21.     Defendant SunPath is a company that engages in the sale and administration of auto warranties.  SunPath advertises its business, in part, by having unsolicited high-pressure calls placed to consumers to market its business and induce clients to purchase automobile warranties on the spot.

22.     SunPath makes artificial or prerecorded calls to cellular telephone numbers whose users have not provided SunPath with prior express consent to receive such calls, including making calls to each Class member.

23.     As part of its marketing strategy, SunPath calls individuals whose numbers are listed on the National Do-Not-Call Registry.  Upon information and belief, SunPath does not maintain reasonable and routine business practices as required under 47 C.F.R. § 64.1200(c)(2).

24.     Numerous consumer complaints have been made regarding SunPath's telemarketing practices, as is evident from the Better Business Bureau website, which includes multiple complaints such as the following:

(1)     "I get repeated calls from this company, in spite of being on the Do Not Call list. I ask repeatedly to not call me, but they continue to do so. And it is definitely SunPath, the last person I spoke to gave me the website info, and an actual working callback number. . . . They clearly ignore the Do Not Call list, as I've been on it for years." See BBB Complaint, SunPath Ltd., 5/7/2019;

(2)     "SunPath Ltd has contacted my cellphone for marketing purposes. My

5

phone has been on the national Do Not Call registry for many years and this company should not have contacted me." <u>See</u> BBB Complaint, SunPath Ltd., 4/6/2020; and

(3)   "**** with ******* **** ********** called today trying to sell me an extended car warranty. **** stated he is doing this on behalf of Sunpath. These calls start out from an auto dialer and a robot, then evolve into a transfer or 2 before you get to the salesperson. I have been registered on the Do Not Call List for years, yet these comapanies continue to call." <u>See</u> BBB Complaint, SunPath Ltd., 1/13/2021.

## FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFF LORRAINE FRATILLA

25.     Fratilla is the sole and current subscriber to the cellular telephone number ending in -5235, which has been listed on the National Do-Not-Call Registry since 2015.

26.     Fratilla is financially responsible for the phone service to the -5235 number, including cellular costs and data storage usage incurred as a result of the unlawful calls made by SunPath.  The -5235 number is primarily used for personal and residential purposes and is not listed as or used as a business line.

27.     Fratilla has been receiving an overwhelming amount of telemarketing calls to her cellular telephone number that have been annoying, harassing, intrusive, aggravating, and frustrating Fratilla continually.

28.     On January 12, 2021, Fratilla received another one of several annoying and invasive unsolicited calls on her cellular telephone number, this one from SunPath.

29.     The January 12th call from SunPath was from a number with a 954-area code (South Florida).  Fratilla did not provide prior express consent to receive this call.  The call intruded upon her privacy, interrupted her workday, and deprived her of her time and mental energy when receiving and listening to the caller.

30.     When Fratilla answered the January 12th call, she heard an automated prerecorded

voice whose message stated that the caller was attempting to reach her regarding her vehicle warranty, stating that it was her final notice.  The recording did not identify what company was making the call, but prompted Fratilla to press one number to opt-out or a different number for more information.  In an effort to find out who was responsible for making this unsolicited and intrusive call, Fratilla chose the option for more information.  She was transferred to an individual who had a difficult to understand accent, who then transferred Fratilla to a "licensed specialist."

31.     The licensed specialist identified herself as Amy. Fratilla asked Amy what company she was with, and Amy responded that she was calling on behalf of a company called SunPath and disclosed the website for the company as www.gosunpath.com.[1]

32.     During the call, Amy asked Fratilla a series of questions about her car, its maintenance, and whether the car had been modified.  Amy then described some of the terms of the extended warranty plan to Fratilla over the phone.  To determine whether the caller was legitimate, Fratilla asked if the plan was being offered by or on behalf of her car manufacturer, but Amy responded that it was not, and that the warranty company was SunPath.  When Fratilla stated that she was not interested in the plan, Amy abruptly ended the call.

33.     On February 18, 2021, Fratilla received another prerecorded call from SunPath from a 239-area code (Southwest Florida).  The prerecorded message made false statements regarding Fratilla's car warranty, including that she had repeatedly ignored mail regarding the warranty and that this was her "last chance" to renew her expired car warranty.  Fratilla pressed the number that would take her to a representative.

34.     Fratilla was first connected with a person who had a heavy accent and who

---

[1] Since that time, SunPath has apparently changed its website address from  www.gosunpath.com to www.mysunpath.com.  Internet users are currently redirected to www.mysunpath.com from www.gosunpath.com at the time this complaint was filed.

transferred her to a "licensed representative" purportedly named Elizabeth. Elizabeth engaged in high-pressure sales tactics to try to sell Fratilla an extended car warranty, saying that she would have to purchase before the call ended. Fratilla asked if Elizabeth was associated with her car manufacturer's company, but Elizabeth said no.

35.    Fratilla asked for a website for the company she was speaking with and Elizabeth directed her to www.gosunpath.com. Fratilla then realized that this was the same company from previous calls, but before she was able to make a request to be placed on the internal do-not-call list for SunPath, the call abruptly ended.

36.    During the period of time that the unsolicited calls were ringing, during the prerecorded voice message, and while Amy and Elizabeth were making their unwanted sales pitches, Fratilla's time and telephone line were interrupted. Fratilla's cellular phone was rendered unavailable to receive or make legitimate phone calls as each call entirely consumed the line for the duration of each call. Fratilla stopped and answered the intrusive calls during times which she could have otherwise been pursuing other tasks in her day as the January 12 call alone lasted for almost 14 minutes.

37.    These calls made by or on behalf of Defendant to Fratilla were placed using an artificial or prerecorded voice to deliver a message.

**FACTUAL ALLEGATIONS REGARDING PLAINTIFF KESHA REID**

38.    Reid is the sole and current subscriber to the cellular telephone number ending in -9310, which has been listed on the National Do-Not-Call Registry since 2013.

39.    Reid is financially responsible for the phone service to the -9310 number, including cellular costs and data storage usage incurred as a result of the unlawful calls made by SunPath. The -9310 number is primarily used for personal and residential purposes and is not listed or used

as a business line.

40.     Similar to Fratilla, Reid has been receiving an overwhelming amount of telemarketing calls to her cellular phone number that have been annoying, harassing, intrusive, and aggravating.

41.     Many of the unsolicited calls Reid receives are calls made by or on behalf of SunPath.

42.     For example, on April 5, 2021 Reid received an unsolicited  phone call from a number with a 330-area code.  Reid had not consented to receiving such unsolicited telemarketing calls.

43.     This call created an intrusion upon her privacy, interrupted her day, and deprived her of her time and mental energy to have to receive, answer, and listen to the call.

44.     Upon answering the call from the 330-area code, a representative named Anna greeted her.  Anna proceeded to ask Reid specific questions about her car and was given a quote for the purchase of a car warranty plan.  Reid was then transferred to a second representative, Lisa, who said that she was the financial manager and engaged in high-pressure sales tactics to push Reid into purchasing a car warranty plan during the call by making a down payment before she could review the contract.

45.     When Reid asked for information on the company that she was speaking with, she was given the website of www.mysunpath.com.   Reid never consented to receive calls from SunPath.  Reid indicated that she would not purchase the plan, and the call ended shortly thereafter.

46.     The next day, April 6, 2021, Reid received another call from a 954-area code.

47.     When answered, a representative who indicated her name as Bella greeted her. Similar to the previous day, Bella began the call by asking for specific information about Reid's

car and quickly transferred her to a representative going by the name Melanie.

48.     Melanie used the same high-pressure sales tactics Lisa used the previous day to try to get Reid to purchase an unsolicited car warranty at that time.  When that did not work, Melanie transferred the call to the Manager, Andrea.

49.     During the call, Reid was informed that the company information could be found at www.mysunpath.com.  When Reid stated that she was not interested in purchasing, the call quickly ended.

50.     During the period of time that the unsolicited calls were ringing, and while the sales representatives and managers were using their high pressure sales tactics to try to induce Reid into purchasing car warranty plans, Reid's time and telephone line were interrupted.  Reid's cellular phone line was rendered unavailable to receive or make legitimate phone calls as each call entirely consumed the line for the duration of each call.  Reid had to stop and answer these intrusive calls during times which she could have otherwise been pursuing other tasks in her day as the April 6 call alone lasted for 15 minutes.

## FACTUAL ALLEGATIONS REGARDING ALL PLAINTIFFS

51.     SunPath has made more than one call to Plaintiffs within a 12-month period despite Plaintiffs' cellular telephone numbers being registered with the National Do Not Call Registry.

52.     SunPath is responsible for the unsolicited calls being placed to Plaintiffs' cellular telephone lines.

53.     SunPath did not have prior express consent to make telemarketing calls to Plaintiffs. SunPath knowingly or willfully made these calls to Plaintiffs' cellular telephone numbers, calling these numbers while they were registered on the National Do Not Call Registry.

54.     The calls made by or on behalf of SunPath were not made for emergency purposes.

10

Nor were the calls made to collect a debt to the United States.

55.     The content of the prerecorded messages to Fratilla, as well as the content of the calls with the live representatives described above, demonstrate that the calls were made for purposes of marketing, advertising, and promoting SunPath's goods and services to Plaintiffs as part of an overall telemarketing strategy.

56.     Because Plaintiffs do not know all of the phone numbers used by SunPath to place telemarketing calls, and because SunPath and its representatives call from numbers that do not identify SunPath as the caller, Plaintiffs cannot identify additional calls that SunPath made to them without discovery.  The call records documenting the information regarding each call made to Plaintiffs, including the exact date and time of the calls and the telephone numbers used to make the calls, are in the possession, custody, or control of Defendant.

57.     SunPath has made artificial or prerecorded voice calls to persons in Florida and throughout the United States in violation of the TCPA.  SunPath has made multiple calls to persons in Florida and throughout the United States, without consent, despite the fact that the recipients' respective telephone numbers were listed on the National Do Not Call Registry.

58.     SunPath continues to make similar artificial or prerecorded voice calls to persons on their cellular telephone numbers in Florida and throughout the United States and make multiple calls, without consent, to persons in Florida and throughout the Unted States despite their numbers being listed on the National Do Not Call Registry.

59.     Plaintiffs were damaged by SunPath's unsolicited telemarketing calls to Plaintiffs' cellular telephone numbers because the lines were rendered unavailable for the duration of each call.

60.     Plaintiffs were damaged by SunPath's repeated, unsolicited telemarketing calls to

their cell phones. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020) ("[t]he receipt of more than one unwanted telemarketing call . . . is a concrete injury that meets the minimum requirements of Article III standing." (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019)).

61.     Plaintiff Fratilla attempted to address these violations with Defendant through a demand letter, but Defendant refused to respond to the letter.  This action was therefore undertaken.

## CLASS ACTION ALLEGATIONS

62.     *Class Definitions*.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring this case as a class action on behalf of the National Classes defined as follows:

Artificial or Prerecorded Class:  All persons in the United States to whom Defendant (a) initiated one or more non-emergency telephone calls; (b) promoting Defendant's goods or services; (c) to their cellular telephone number(s); (d) through the use of an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint.

National Do-Not-Call Class:  All persons in the United States who: (a) received more than one call initiated by Defendant; (b) in a 12-month period; (c) without prior express consent; (d) for the purpose of promoting or selling Defendant's good or services; (e) on their cellular telephone line or residential telephone line; (f) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call Registry; and (g) at any time in the period that begins four years before the date of filing this Complaint.

Excluded from each of these Classes are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal

representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family, persons who execute and file a timely request for exclusion, and the legal representatives, successors, or assignees of any such excluded person.

63.     *Numerosity*:  The Classes are each so numerous that joinder of all members is impracticable.  On information and belief, the Classes are at least in the thousands, of which Plaintiffs are members of one or both Classes.  Additionally, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

64.     *Commonality*:  There are numerous questions of law and fact common to Plaintiffs and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendant used an artificial or prerecorded voice message when it made the calls that are the subject of this lawsuit;

b.      Whether Defendant was engaged in telemarketing when it made the calls that are the subject of this lawsuit;

c.      As to Plaintiffs and the Artificial or Prerecorded Class, whether Defendant violated 47 U.S.C. § 227(b)(1)(A) by making any call to cellular telephone numbers using an artificial or prerecorded voice (other than a call made for emergency purposes or made with the prior express consent of the called party);

d.      As to Plaintiffs and the National Do-Not-Call Class, whether Defendant violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry;

e.      Whether Defendant knowingly and/or willfully violated the TCPA or the rules prescribed under it when it made the calls that are the subject of this lawsuit, thus entitling Plaintiffs and the Class members to treble damages; and

f.      Whether Defendant should be enjoined from violating the TCPA in the future.

65.      *Typicality*.  Plaintiffs' claims are typical of the claims of the Classes.  Plaintiffs' claims, like the claims of the Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

66.      *Adequacy of Representation*.  Plaintiffs will fairly and adequately protect the interests of the Classes.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.  Plaintiffs are represented by counsel skilled and experienced in class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.

67.      *Predominance*.  Defendant has engaged in a common course of conduct toward Plaintiffs and members of the Classes.  Common questions of law and fact predominate over questions affecting only individual class members.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

68.      *Superiority*.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is essential to compel Defendant to comply with the TCPA.  The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because damages in an individual action for violation of the TCPA are small, and the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for individual Class members to pursue

redress for these wrongs.   Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves the resources of the parties and the court system, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

69.     *Injunctive and Declaratory Relief Appropriate*.  Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis.  Moreover, on information and belief, Plaintiffs allege that the calls made by Defendant that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

70.     Plaintiffs are not aware of any other certified class action litigation concerning this controversy already commenced by others who meet the criteria for class membership as described above.

**COUNT I**
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) – Cellular Telephone Calls – Artificial or Prerecorded Class)**

71.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 70.

72.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls to the cellular telephone numbers of Plaintiff Fratilla and members of the Artificial or Prerecorded Class using an artificial or prerecorded voice without prior express consent.

73.     As a result of Defendant's violations of the TCPA, 47 U.S.C. §227(b)(1)(A), Fratilla and members of the Artificial or Prerecorded Class presumptively are entitled to an award of $500 in damages for each and every call to their cellular telephone lines using an artificial or

prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

74.     Fratilla and members of the Artificial or Prerecorded Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227(b)(l)(A), by making calls to any cellular telephone numbers using an artificial or prerecorded voice in the future without prior express consent.

**COUNT II**
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(l)(A) – Cellular Telephone Calls – Artificial or Prerecorded Class)**

75.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 70.

76.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(l)(A), by making calls to the cellular telephone numbers of Fratilla and members of the Artificial or Prerecorded Class using an artificial or prerecorded voice without prior express consent.

77.     Defendant knew that it lacked Fratilla and Artificial or Prerecorded Class members' consent to make the calls to their respective cellular telephone numbers.

78.     As a result of Defendant's knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1 )(A), Fratilla and members of the Artificial or Prerecorded Class are entitled to treble damages of up to $1,500 for each and every call to their cellular telephone lines using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

79.     Fratilla and members of the Artificial or Prerecorded Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227(b)(l)(A), by making calls to any cellular telephone line using an artificial or prerecorded voice in the future without prior express consent.

**COUNT III**
**(Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)**

80.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 70.

81.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

82.     As a result of Defendant's violations of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the National Do-Not-Call Class are entitled to an award of $500 in statutory damages for each and every call initiated to them after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

83.     Plaintiffs and members of the National Do-Not-Call Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation in the future to telephone subscribers who registered his or her telephone number(s) with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(A).

**COUNT IV**
**(Knowing and/or Willful Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)**

84.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 70.

85.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone

solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

86.     At all relevant times, Defendant knew, or should have known, that it was initiating telephone solicitations to numbers listed on the National Do-Not-Call Registry.

87.     As a result of Defendant's knowing and/or willful violations of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the National Do-Not-Call Class are entitled to an award of treble damages of up to $1,500 for each and every call made to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

88.     Plaintiffs and members of the National Do-Not-Call Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation in the future to any telephone subscriber who has registered their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(A).

## **DEMAND FOR JURY**

Plaintiffs demand a trial by jury for all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs Lorraine Fratilla and Kesha Reid, individually and on behalf of the Classes, respectfully request a judgment granting the following relief:

a.     Certification of the proposed Classes;

b.     Appointment of Plaintiffs as representatives of the proposed Classes;

c.     Appointment of the undersigned counsel as counsel for the proposed Classes;

d.     A declaration that Defendant's actions complained of herein violated the TCPA;

    e.      An injunction enjoining Defendant from engaging in the unlawful conduct set forth herein;

    f.      An award to Plaintiffs and the Classes of statutory damages, as allowed by law;

    g.      An award of attorneys' fees and costs, as allowed by law and/or equity, to Class counsel in the event one or more of the Classes are certified;

    h.      Pre-judgment and post-judgement interest on monetary relief; and

    i.      An order granting all other and further relief as the Court deems necessary, just, and proper.

Dated: May 19, 2021                Respectfully submitted,

**ATHERTON GALARDI MULLEN
& REEDER PA**
224 Datura Street, Suite 815
West Palm Beach, Florida 33401
Telephone: (561) 293-2530
Facsimile: (561) 293-2593

By: _/s/  Scott W. Atherton_
SCOTT W. ATHERTON
Florida Bar No. 0749591
E-mail:  scott@athertonlg.com
TERENCE M. MULLEN
Florida Bar No. 191957
E-mail: terence@athertonlg.com
MIA A. WILLIAMS
Florida Bar No. 1010648
E-mail: mia@athertonlg.com

*Attorneys for Plaintiffs and the Proposed Classes*